## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES MALANTONIO,**<br>            **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **THE VALLEY CAFE,**<br>            **Defendant.** | **NO.  23-5125** |

### MEMORANDUM

**HODGE, J.**                                                                **July 16, 2024**

James Malantonio ("Plaintiff"), a line cook at The Valley Cafe ("Defendant"),

complained to Defendant's owner about the racially and sexually discriminatory behavior of his

direct supervisor. Defendant's owner fired Plaintiff two weeks later. Plaintiff alleges that he was

fired in retaliation for complaining about his supervisor's discriminatory behavior in violation of

Title VII and the Pennsylvania Human Relations Act ("PHRA"). Defendant moves to dismiss

Plaintiff's complaint for failure to state a claim. For the reasons that follow, the Court denies

Defendant's motion to dismiss.

## I.      BACKGROUND

### A.      Factual Background[1]

Defendant hired Plaintiff as a line cook on June 5, 2022. (ECF No. 7 at 2 ¶ 11.) Plaintiff

has a son who is Black, but Plaintiff has not pled facts about his own race. (*See id.* at 3 ¶ 13.)

Plaintiff's direct supervisor, a white kitchen manager named "Ray LNU," used racial slurs at work,

including the n-word. (*Id.* ¶ 12.) Plaintiff asked Ray to stop, but Ray continued to make racist

comments. (*Id.* ¶ 13). Ray also allegedly sexually harassed female employees in front of Plaintiff.

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

For example, he "gave the female servers nicknames such as 'sugar tits' and 'sweet cheeks,'" lifted his apron to request oral sex from a female dishwasher, and verbalized his desire to be "spanked" to a female employee. (*Id.* ¶ 14.)

On July 31, 2022, Plaintiff complained about Ray's racial and sexual harassment to the Defendant's owner, Craig Keyser, via text messages, which are attached to the amended complaint. (*Id.* ¶ 15; *see also* ECF No. 7-4 at 1–4.) Mr. Keyser responded that he was aware of Ray's behavior and was "working on something." (ECF No. 7-4 at 3.) He asked Plaintiff to "hang in." (*Id.*) Two days after Plaintiff complained about Ray, Mr. Keyser stated in a text message to Plaintiff that Plaintiff had given two weeks' notice. (*Id.* at 8.) Plaintiff responded that he "never gave a 2 week notice." (*Id.*) Two weeks later, Mr. Keyser fired Plaintiff because "things [were] not working out as [Mr. Keyser] hoped[.]" (*Id.* at 10.)

### B.    Procedural History

In February 2023, Plaintiff timely filed administrative charges with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission. (ECF No. 7 at 1–2 ¶¶ 5, 7.) He received a right-to-sue letter from the EEOC and timely filed his judicial complaint on December 27, 2023. (ECF No. 7-3; ECF No. 1.) After Defendant filed a motion to dismiss (ECF No. 5), Plaintiff filed an amended complaint (ECF No. 7). The Amended Complaint brings three retaliation counts under Title VII and the PHRA, all of which are premised on Plaintiff's termination for opposing his supervisor's discrimination based on race and sex. (ECF No. 7 at 5–8.) Defendant has moved to dismiss Plaintiff's Amended Complaint. (ECF No. 8.)

## II.    LEGAL STANDARD

In assessing whether Plaintiff has alleged claims upon which relief may be granted, the Court applies the familiar standard applicable to Rule 12(b)(6) motions. A plaintiff's complaint

must provide merely a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This standard "'does not impose a probability requirement at the pleading stage.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Instead, "[t]he complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213(3d Cir. 2009)).

## III.    DISCUSSION

The same legal standard governs Plaintiff's retaliation claims under both Title VII and the PHRA. *See Slagle v. County of Clarion*, 435 F.3d 262, 265 n.5 (3d Cir. 2006) (citing *Fasold v. Justice*, 409 F.3d 178, 184 n.8 (3d Cir. 2005)). To adequately allege retaliation claims under either provision, Plaintiff must plead: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal connection between the two. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). Defendant argues that Plaintiff failed to plead both (a) that he engaged in a protected activity and (b) a causal connection between his complaint to Mr. Keyser and his subsequent termination. The Court disagrees and finds that Plaintiff has pled sufficient facts to survive Defendant's motion to dismiss.

A.    **Protected Activity**

Plaintiff has sufficiently pled that he engaged in a protected activity. The anti-retaliation provision of Title VII protects "those who oppose discrimination made unlawful by Title VII." *Moore*, 461 F.3d at 341 (citing *Slagle*, 435 F.3d at 266). The opposition clause of Title VII can be triggered by "informal protests of discriminatory employment practices, including making complaints to management[.]" *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (quoting *Sumner v. United States Postal Service*, 899 F.2d 203, 209 (2d Cir. 1990)). Though employees who are not members of a protected class "may be unable to successfully complain under the *antidiscrimination* provision of Title VII" due to a discriminatory environment, if they are subjected to "'materially adverse actions' because they reasonably perceived that environment as violative of Title VII and objected, they have a valid *retaliation* claim." *Moore*, 461 F.3d at 342 (emphasis added) (citing 42 U.S.C. § 2000e-3(a)).

Plaintiff informally protested Ray's alleged racial and sex-based discrimination by complaining to Mr. Keyser, who owns Defendant, the Valley Cafe. Plaintiff texted Mr. Keyser: "I'm surprised you haven't got sued yet with all [Ray's] racist comments and sexual harassment he does[.]" (ECF No. 7-4 at 3.) Plaintiff sent further texts to Mr. Keyser describing Ray's "racist talk," Plaintiff's protestations to Ray, noting that Ray "is always asking dish washer for a blow job or touch her boobs," and noting "all the sexual comments [Ray] makes to the servers[.]" (*Id.* at 4–6.) Plaintiff has clearly pled that his supervisor repetitively used the n-word in the workplace despite Plaintiff's protestations and that Ray sexually harassed female employees in a variety of ways. He has also pled that he objected by texting Mr. Keyser. This is sufficient at the motion to dismiss stage to demonstrate that Plaintiff "reasonably perceived" Defendant's

workplace "as violative of Title VII and objected[.]" *Moore*, 461 F.3d at 342. Thus, he has adequately alleged that he engaged in a protected activity. *See id.*

Defendant's primary counterargument is without merit and, thus, unpersuasive. Defendant argues that Plaintiff has failed to adequately plead claims for race or sex-based *discrimination* under Title VII, incorrectly asserting that this putative failure renders Plaintiff's complaints to Mr. Keyser non-cognizable under Title VII's *opposition* clause. Specifically, Defendant argues that because Plaintiff has not pled that he or any employee is Black, he has not pled discrimination based on race. Additionally, Defendant argues that Plaintiff has failed to plead sufficient facts to support a sex-based discrimination claim. However, when an employee protests what they believe "in good faith to be a discriminatory practice," they "need not prove the merits of the underlying discrimination complaint" to make out a retaliation claim. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (citing *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 468 (3d Cir. 1993), *overruled on other grounds by Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir. 1995)). Plaintiff need not assert that he is Black or a female to assert a retaliation claim based on race and sex. Instead, the employee need only show that he acted "under a good faith, reasonable belief that a violation existed." *Id.* (quoting *Griffiths*, 988 F.2d at 468); *see also Moore*, 461 F.3d at 341 (explaining that employee opposing discrimination "must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII" (citing *Clark County v. Breeden*, 532 U.S. 268, 271 (2001) (per curiam))). Here, Plaintiff has sufficiently pled that Ray's behavior created a reasonable, good-faith belief that illegal discrimination was taking place at Defendant. In fact, Mr. Keyser apparently agreed with Plaintiff's assessment of Ray's behavior when he responded to Plaintiff's complaint by saying:

"I'm aware and already working on something." (ECF No. 7-4 at 3.) Thus, Plaintiff has adequately pled that he engaged in protected activity to survive Defendant's motion to dismiss.

### B.    Causal Connection

Plaintiff has also sufficiently pled a causal connection between his complaint and his termination to survive a motion to dismiss. "Unusually suggestive" proximity in time between protected activity and termination may independently demonstrate the requisite causal connection, but "there is no bright line rule as to what constitutes unduly suggestive temporal proximity." *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 232–33 (3d Cir. 2007) (citing *Clark County*, 532 U.S. at 273–74). "Where temporal proximity is not unusually suggestive on its own, the court looks to the evidence, as a whole, to determine whether it is sufficient to raise an inference of retaliation." *Culler v. Shinseki*, 840 F. Supp. 2d 838, 847 (M.D. Pa. 2011) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)). Factors to consider include "inconsistencies in the employer's proffered reasons for taking the adverse action, or any other evidence in the record sufficient to support the inference of retaliatory animus." *Id.* (citing *Farrell*, 206 F.3d at 279–81).

Plaintiff was fired two weeks after he complained about Ray's discriminatory behavior to Mr. Keyser. Though suggestive, this two-week period taken alone may not be so "unusually suggestive" as to independently establish a causal connection. *See Kortyna v. Lafayette College*, 726 F. App'x 934, 938 (3d Cir. 2018) (finding three weeks insufficient to independently establish causal connection). However, the two-week period need not be taken alone, since it is not the sole fact that suggests a causal connection. Plaintiff has also pled that Mr. Keyser's proffered reasons for terminating him were inconsistent. When Plaintiff first mentioned Ray's racist and sexist behavior, Mr. Keyser asked him to "hang in" because he was "aware and

already working on something." (ECF No. 7-4 at 3.) Then, in the same text message where Mr. Keyser stated that he "had an in depth discussion with Ray," he incorrectly stated that Plaintiff had given his two-week notice. (ECF No. 7-4 at 8.) After Plaintiff protested that he had not, in fact, given his two-week notice,[2] Mr. Keyser fired him, stating vaguely: "I'm sorry but things are not working out as I hoped and I have to let you go." (*Id.* at 10.)

Taking all inferences in favor of Plaintiff, a factfinder could conclude that Mr. Keyser searched for a pretext for firing Plaintiff in the two weeks following his complaint about Ray. And further, that the manufactured basis for terminating Plaintiff came after Mr. Keyser and Ray had their "in depth discussion." While the content of that "in depth discussion" is currently unknown by Plaintiff and to the Court, what is known is that following the discussion between Mr. Keyser and Ray, Mr. Keyser then unsuccessfully attempted to frame Plaintiff's termination as Plaintiff's own decision to quit. A factfinder could also conclude that, having already decided to fire Plaintiff for complaining about Ray, Mr. Keyser simply adjusted his reason when his first attempt failed of accepting a two-week notice Plaintiff had not tendered, and fired Plaintiff because—vaguely—things were "not working out" as Mr. Keyser hoped. These inconsistent characterizations of Plaintiff's termination, in addition to the two-week proximity between Plaintiff's complaint and his termination, sufficiently demonstrate the causation requirement of a retaliation claim to survive a motion to dismiss.

---

[2] The Court notes that Plaintiff had stated to Mr. Keyser in an earlier text message, "I'll let you know my 2 week[.]" (ECF No. 7-4 at 2.) At this early juncture in the litigation, the twin facts that Plaintiff (i) announced his intention to keep Mr. Keyser apprised of his two-week notice and (ii) subsequently denied that he had given Mr. Keyser his two-week notice are sufficient to infer that Plaintiff had not, in fact, given Mr. Keyser his two-week notice.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint is denied. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**