## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES MALANTONIO,**<br>            **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **THE VALLEY CAFE,**<br>            **Defendant.** | **NO.  23-5125** |

**HODGE, J.**                                                                                          **March 30, 2026**

### MEMORANDUM

In this action, Plaintiff James Malantonio ( "Plaintiff") asserts claims against his employer, The Valley Café ("Defendant"), of retaliation for reporting race and sex-based discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a), and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(d), *et seq*. (ECF No. 7.) Defendant moved for summary judgment on all claims (ECF No. 21 (the "Motion")) and Plaintiff opposed Defendant's Motion (ECF No. 24 (the "Response")). For the reasons that follow, Defendant's Motion is denied.

### I.    BACKGROUND[1]

Plaintiff worked as a line cook for Defendant beginning June 5, 2022 and was supervised by the Kitchen Manager, Ray.[2] (ECF No. 23 ¶¶ 1, 2.)[3] Over the course of Plaintiff's ten weeks of employment with Defendant, Ray made inappropriate racial and sexual comments in the

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] As reflected in the parties' statements of undisputed facts, the dates of Plaintiff's employment with Defendant are approximate. (ECF Nos. 23, 24-2.)

[3] Plaintiff admits to all paragraphs of Defendant's Statement of Undisputed Facts (ECF No. 24-2) and therefore the Court references Defendant's Statement of Undisputed Facts throughout this opinion.

workplace. (*Id.* ¶¶ 3, 7.) Plaintiff reported this behavior to Defendant's owner, Craig Keyser ("Mr. Keyser"), via text messages on July 31, 2022. (*Id.* ¶ 4.) Specifically, Plaintiff wrote to Mr. Keyser, "[g]otta be honest idk how much longer this is going to work out ray told me to shut the fuck up and he's lucky I didn't knock him out . . . I'm surprised you haven't got sued yet with all his racist comments and sexual harassment he does." (ECF No. 22-2 at 1–2; ECF No. 23 ¶ 6.) Mr. Keyser replied that he was "aware and already working on something. Please hang in." (ECF No. 22-2 at 2; ECF No. 23 ¶ 10.) Plaintiff responded "[w]ell I'll let you know my 2 week he started with racist talk which I then showed him a picture of my black son and since had to say something 6 times about his comments and my son being black." (ECF No. 22-2 at 4.) Plaintiff also added that Ray "is always asking dish washer for a blow job or touch her boobs, or all the sexual comments he makes to the servers or the fact he looks over the minor girls and makes comments and when I said something about their age he said if they are old enough to drive they are old enough for sex." (*Id.* at 6.)

Two days later, on August 2, 2022, Mr. Keyser texted Plaintiff that he had an "in depth discussion with Ray hopefully this is behind us. You said in an earlier text you were giving your weeks notice on Sunday if that is your decision that's fine and I wish you the best." (*Id.* at 8; ECF No. 23 ¶ 11.) Plaintiff responded, "I never gave a 2 week notice just stated idk how long this would work out with me meaning the way ray was acting." (ECF No. 22-2 at 9; ECF No. 23 ¶ 12.) On August 15, 2022, Mr. Keyser texted Plaintiff "I'm sorry but things are not working out as I hoped and I have to let you go." (ECF No. 22-2 at 10; ECF No. 23 ¶ 13.) Plaintiff was terminated the same day. (ECF No. 22-3 at 4.)

## II.    PROCEDURAL HISTORY

On February 7, 2023, Plaintiff timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission. (ECF No. 7 ¶¶ 5, 7.) He received a right-to-sue letter from the EEOC and timely filed his judicial complaint with this Court on December 27, 2023. (ECF Nos. 1, 7-3.) After Defendant filed a motion to dismiss (ECF No. 5), Plaintiff filed an amended complaint (ECF No. 7). The Amended Complaint brings three retaliation counts under Title VII and the PHRA, all of which are premised on Plaintiff's termination for opposing his supervisor's sex and race-based discrimination. (ECF No. 7 at 5–8.) On April 1, 2024, Defendant filed its Motion to Dismiss the Amended Complaint, which this Court denied on July 16, 2024. (ECF Nos. 8, 14, 15.) After the parties completed discovery, Defendant moved for summary judgment. (ECF No. 21.)

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden of the moving party may be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has met its initial burden, the non-movant's response must, by "citing to particular parts

of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-movant fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

## IV. RETALIATION CLAIMS (COUNTS I–III)

Title VII and the PHRA prohibit an employer from engaging in race and sex-based discrimination against an employee. *See* 42 U.S.C. §§ 2000e-2, *et seq.*; 43 Pa. Cons. Stat. §§ 951, *et seq.* These statutes also protect employees who attempt to exercise the rights guaranteed by their respective provisions against retaliation by employers. *See* 42 U.S.C. § 2000e-3(a); 43 Pa. Cons. Stat. § 955(d). The elements of retaliation under Title VII and the PHRA are "essentially the same." *Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 422 (E.D. Pa. 2022). In the absence of direct evidence of retaliation, we consider retaliation claims for both statutes under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973); *see, e.g.*, *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005).

To state a prima facie case of retaliation under *McDonnell Douglas*, a plaintiff must show (1) that he engaged in an activity protected by Title VII or the PHRA; (2) that the employer took an adverse employment action either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *See Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action. *See Daniels v. Sch. Dist. of*

*Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015). If the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (quoting *Marra*, 497 F.3d at 300).

Defendant contends that Plaintiff has failed to make out a prima facie case because he cannot show (1) that the text messages he sent to Mr. Keyser constituted protected activity or (2) that there was a causal connection between Plaintiff's texts and the adverse employment action. The parties do not dispute that Plaintiff was subject to an adverse employment action—his termination—after he sent the text messages to Mr. Keyser. (ECF No. 23 ¶ 13.)

For purposes of the anti-retaliation provision of Title VII, protected activities include participation in certain formal Title VII proceedings and opposition to discrimination made unlawful by Title VII. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006), *as amended* (Sept. 13, 2006). While complaints protected under this second, "opposition" clause of Title VII "may be informal, they may not be so vague that they are not constructive." *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 601–02 (E.D. Pa.), *aff'd*, 708 F. App'x 48 (3d Cir. 2017). "Complaints must be specific enough to notify management of the particular type of discrimination at issue in order to constitute 'protected activity.'" *Mikell v. Marriott Int'l, Inc.*, 789 F. Supp. 2d 607, 618–19 (E.D. Pa. 2011) (quoting *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 288 (3d Cir. 2010)). "When an employee communicates to h[is] employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009).

Defendant argues that because "Plaintiff's text[s] did not report conduct targeted at him, nor did [they] identify any employee who was allegedly being discriminated against," they are not protected activity and therefore Plaintiff cannot make out a prima facie case of retaliation. (ECF No. 22 at 8.) Plaintiff argues that all that is required under Title VII for a complaint is a good faith reasonable belief that a Title VII violation existed and for the complaint to be specific enough to notify management of the type of discrimination at issue. (ECF No. 24-1 at 6 (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996); *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 288 (3d Cir. 2010)).) Plaintiff admits that none of Ray's alleged comments were directed at him personally, that Plaintiff is not part of a protected class under Title VII, and that he never submitted a formal written complaint regarding Ray's conduct. (ECF No. 23 ¶¶ 8, 9, 16.) Nonetheless, Plaintiff argues that his text messages constituted informal opposition to Ray's race and sex-based discrimination and that is all that is required to qualify as protected activity. (ECF No. 24-1 at 5–6.)

This Court finds that Plaintiff's text messages constituted informal opposition to conduct in violation of Title VII such that the messages were protected activity. Contrary to Defendant's assertion, the discriminatory conduct Plaintiff complained of did not have to be directed at Plaintiff in order to be protected under Title VII's retaliation provision. The retaliation provision makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Neither the plain language of the statute nor case law supports Defendant's assertion that the discrimination complained of must target the complainant. All that is required is that the complaint opposes a practice made unlawful by Title VII. *See Thomas v. City of Beaverton*, 379 F.3d 802 (9th Cir. 2004) (holding that former city employee engaged in protected activity under the opposition clause

of Title VII's retaliation provision when she opposed retaliation against coworker based on coworker's Title VII action against the city); *Costa v. Sears Home Imp. Prods., Inc.*, 65 F. Supp. 3d 333, 345–46 (W.D.N.Y. 2014) (holding that employee's informal complaint to her supervisor that she believed her coworker was being harassed constituted a protected activity). Furthermore, Plaintiff's texts were sufficiently clear to put Mr. Keyser on notice of the particular type of discrimination complained of, and although they did not identify the names of the employees at whom Ray's comments were targeted, they identified the employees' positions—*i.e.*, the "dish washer" and "servers." The Court therefore finds that Plaintiff engaged in protected activity when he texted Mr. Keyser regarding Ray's discriminatory comments.

A plaintiff may establish the required causal link to the adverse employment action by demonstrating either: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *See Lauren W ex rel. Jean W v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). "Where temporal proximity is not unusually suggestive on its own, the court looks to evidence, as a whole, to determine whether it is sufficient to raise an inference of retaliation." *Culler v. Shineski*, 840 F. Supp. 2d 838, 847 (M.D. Pa. 2011). Such evidence includes "inconsistencies in the employer's proffered reasons for taking the adverse action." *Id.*

Defendant asserts that even assuming Plaintiff engaged in protected activity, he cannot establish a causal link between the activity and his termination because "[t]emporal proximity alone is rarely enough" to establish a causal connection, and the two-week gap between Plaintiff's texts and his termination is not close enough in time to be unusually suggestive of a causal connection between Plaintiff's termination and his complaint. (ECF No. 22 at 9 (citing *Kortyna v. Lafayette Coll.*, 726 F. App'x 934, 938 (3d Cir. 2018) (holding "more than three weeks" between

termination and complaint insufficient to establish a causal connection).) Plaintiff argues that inconsistencies in Defendant's proffered reasons for terminating him coupled with the two weeks between his text messages to Mr. Keyser and when he was terminated establish a causal connection. (ECF No. 24-1 at 7–9.) Plaintiff asserts that Defendant's reasons for terminating him were inconsistent because Mr. Keyser first told Plaintiff he thought Plaintiff had given his two weeks' notice and when Plaintiff corrected him and advised he had not given any such notice, Mr. Keyser then told him he would have to let him go. (ECF No. 24-1 at 9.)

This Court finds that the two weeks between Plaintiff's termination and his protected activity, when coupled with Defendant's inconsistent reasoning for terminating Plaintiff, are enough to raise a genuine issue of material fact as to whether or not Plaintiff can establish a causal connection. *See Simms v. Trimac Transp. East, Inc.*, 2009 WL 1587598, at \*13–14 (E.D. Pa. June 8, 2009) (holding that the plaintiff successfully established a causal connection based solely on the twelve days that elapsed between her complaint and her termination).

Finding that Plaintiff has made out a prima facie case of retaliation, the Court now turns to Defendant's proffered legitimate reasons for firing him under the *McDonnell Douglas* framework. 411 U.S. at 802. Defendant argues that it legitimately terminated Plaintiff's employment "due to workplace disruption, threatening conduct, and self-expressed disinterest in continuing his employment." (ECF No. 22 at 2, 9–11.) More specifically, Defendant cites to (1) Plaintiff's threat to "knock [Ray] out" and (2) the fact that Plaintiff allegedly gave his two weeks' notice to Mr. Keyser on or about July 31, 2022. (ECF No. 22 at 10.) The Court finds that threatening another employee is legitimate grounds for termination of employment. *See Motto v. Wal-Mart*, 563 F.3d App'x 160 (3d Cir. 2014). However, the Court cannot accept Defendant's second contention, that Plaintiff had a "self-expressed disinterest in continuing his employment," as a legitimate reason

8

for Plaintiff's termination. Although Plaintiff's initial text message conveying that he would "let [Mr. Keyser] know [his] 2 week[s]" was at best ambiguous, Plaintiff sent a text two days later stating, "I never gave a 2 week notice just stated idk how long this would work out with me meaning the way ray was acting." Plaintiff's expression of dissatisfaction with his job was contingent upon whether his supervisor would be allowed to continue engaging in discriminatory conduct. This statement by Plaintiff cannot serve as a legitimate reason for termination. Nonetheless, finding that Defendant has proffered a legitimate, non-retaliatory reason for Plaintiff's termination based on his threat to "knock [Ray] out," the Court next examines whether Plaintiff has shown that Defendant's reason for its decision was pretextual for retaliation. *McDonnell Douglas*, 411 U.S. at 804.

To discredit Defendant's proffered reason, Plaintiff must provide evidence that "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir.1994). Plaintiff argues that Defendant's contention that he was terminated based on his threat to "knock [Ray] out" is pretextual because Ray was the one engaging in hostile and disruptive conduct by getting close to Plaintiff's face and telling him to "shut the fuck up." (ECF No. 24-1 at 10.) Plaintiff argues that he deescalated the situation by not engaging with Ray and instead reporting the conduct to Mr. Keyser. (*Id.*) Plaintiff solely relies on the text messages themselves as evidence of pretext. (ECF No. 22 at 11–12; ECF No. 24-1 at 10–11.) Even based on this limited evidence, the Court finds that a reasonable factfinder could conclude that Defendant's asserted legitimate reason for terminating Plaintiff was pretextual.

Based on the text messages, it is this Court's observation that Mr. Keyser did not notify Plaintiff that his threat to knock Ray out was inappropriate, nor did he even acknowledge Plaintiff's threat at the time that he received the text. If such conduct was taken seriously and was severe enough to merit Plaintiff's termination, it would be reasonable to expect that this behavior would be called out in some way by Mr. Keyser. Instead, Mr. Keyser did not acknowledge Plaintiff's threat, and Plaintiff was not fired for another two weeks after he made the threat. Therefore, the Court concludes that Plaintiff has cast sufficient doubt on Defendant's contention that Plaintiff was terminated for threatening Ray. Plaintiff's claims thus survive Defendant's Motion for Summary Judgment.

## V.   CONCLUSION

For the reasons discussed above, Plaintiff has raised a genuine issue of material fact regarding his retaliation claims under Title VII and the PHRA. Consequently, Defendant's Motion for Summary Judgment is denied on all Counts. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**

10